Eastern District of Kentucky
**FILED**
JUL 0 7 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-405-KSF

JAMES D. LYONS,                                                                                      PLAINTIFF

V.            **MEMORANDUM OPINION AND ORDER**

DR. CHARLES RAY, M.D., ET AL.,                                                       DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the following motions filed by plaintiff, *pro se*: (1) plaintiff's motion to reconsider the Memorandum Order of May 2, 2006, (2) plaintiff's motion to resolve discovery disputes related to the Memorandum Order of March 16, 2006, and (3) plaintiff's motion to reconsider the Memorandum Order of May 11, 2006.[1] These motions have been fully briefed and are ripe for review.

A.      **Plaintiff's motion to reconsider the Memorandum Order of May 2, 2006**

The Memorandum Order of May 2, 2006 [DE #39], granted in part and denied in part plaintiff's motion for leave to submit five (5) additional Interrogatories to defendant Dr. Ray. This motion was granted as to Interrogatory Nos. 3 and 5 and was denied as to Interrogatory Nos. 1, 2, and 4. Subsequently, plaintiff has revised Interrogatory Nos. 1, 2, and 4, and in light of these revisions, plaintiff has requested that he be granted leave to submit revised Interrogatory Nos. 1, 2, and 4 to Dr. Ray.[2]

---

[1] Pursuant to numerical ¶ 6 of the district court's Scheduling Order entered herein on November 9, 2005, all discovery disputes were referred to the Magistrate Judge for resolution. [DE #6].

[2] Interrogatory Nos. 1, 2, and 4, as revised, are set out within the body of plaintiff's motion to reconsider the Memorandum Order of May 2, 2006, and these same Interrogatories are duplicated in plaintiff's "Third Set of Interrogatories," which are attached to his motion to reconsider.

Defendant has objected to plaintiff's motion to reconsider the Memorandum Order of May 2, 2006, asserting that plaintiff is simply not content with Dr. Ray's answers to his Interrogatories or Dr. Ray's responses to other discovery requests and that the fact that plaintiff does not like the responses he has received to his discovery requests does not authorize plaintiff to continue to propound discovery requests to Dr. Ray until he receives a response that he deems to be satisfactory.

Given the fact that plaintiff is incarcerated and is proceeding *pro se*, the Magistrate Judge concludes that it is necessary to be more flexible in resolving this discovery matter.

Plaintiff's revised Interrogatory Nos. 1, 2, and 4, and the court's rulings with respect thereto, are set out below:

> **REVISED NO. 1**: Please state the factual and/or medical reasons supporting the denial [any answer other than a complete admission] of the attached fifty (50) RFAs. See attached Defendant Dr. Ray's Response to Plaintiff's Requests for Admission with the stipulation that unless ordered by Court, this Interrogatory is directed only to RFA Nos. 1, 4, 5, 6, 9, 10, 12, 15, 16, 17, 20, 21, 22, 25, 26, 27, 28, 29, 31, 32, 35, 36, and 46.

Defendant objects to this revised Interrogatory, asserting that the inquiry is the same as the original proposed Interrogatory No. 1, and is in effect, 23 interrogatories, as it concerns the 23 RFAs identified therein. Defendant submits that with this interrogatory, plaintiff is attempting to circumvent the Rules of Civil Procedure, which he should not be permitted to do.

Due to the relaxed standards afforded *pro se* litigants, especially an incarcerated, *pro se* litigant, such as plaintiff, the Magistrate Judge concludes that plaintiff's Interrogatory No. 1, as revised, is permissible and that Dr. Ray should answer this revised interrogatory. In reaching this decision, the Magistrate Judge is cognizant that in view of the other Interrogatories plaintiff has previously submitted to Dr. Ray, this revised interrogatory, being essentially 23 Interrogatories, exceeds the number of Interrogatories permitted, without leave of court, by Fed.R.Civ.P. 33(a). However, in *Stanley v. Ohio Department of Rehabilitation and Corrections*, WL 31844686 (S.D. Ohio 2002), a case involving a *pro se* prisoner plaintiff, the court permitted plaintiff to serve 54 interrogatories on defendants, under the following rationale:

2

> Despite defendants' assertions, the Court concludes that allowing Mr. Stanley to serve a total of 54 interrogatories is reasonable. As a prisoner, Mr. Stanley has limited means to conduct discovery. In fact, service of interrogatories is likely the most practical means of discovery. *See McConnell v. Pepp,* No. 89 Civ. 2604, 1991 WL 50965, at *1 (S.D.N.Y. April 3, 1991). Therefore, the Court will grant Mr. Stanley's motion for leave to serve 54 interrogatories on defendants.

*Stanley v. Ohio Department of Rehabilitation and Corrections, supra,* at *3.

Based on the rationale in *Stanley* and given plaintiff's incarcerated, *pro se* status, similar to the plaintiff in *Stanley,* the Magistrate Judge concludes that plaintiff should be given leave of court to propound Interrogatory No. 1, as revised, even though technically it will exceed the number of interrogatories ordinarily allowed by Fed.R.Civ.P. 33(a).

> **REVISED NO. 2**: Please state the factual and medical basis for your 5/18/2001 decision of a dilation with filliforms & followers and cystoscopy to treat Lyons's urethral strictures and your underlying belief that this was an acceptable treatment option for Lyons. In formulating your answer please include but do not limit same to the following information:
> (a) Lyons's multiple urethral strictures;
> (b) Lyons's recurrent pendulous urethral stricture of greater than one (1) cm. in length;
> (c) Lyons's urological surgical history of at least six (6) procedures from 1997 through 2000;
> (d) Short and long term prognosis (approximate % recurrence of urethral stricture) with and without ISC.

Defendant Dr. Ray objects to this Revised Interrogatory No. 2, asserting that it is not materially different from the original Interrogatory No. 2, which the court found to be argumentative, vague, ambiguous, and speculative.

Dr. Ray correctly points out that this interrogatory, as revised, remains argumentative. However, the Magistrate Judge concludes that the objectionable portion of this interrogatory (the portion that is argumentative, vague, ambiguous, and speculative) should be excised therefrom and that Dr. Ray should answer the remainder of this interrogatory, as edited by the court, and set out below:

> **REVISED NO. 2**: Please state the factual and medical basis for your 5/18/2001 decision of a dilation with filliforms & followers and cystoscopy to treat Lyons's urethral strictures.

Defendant's objection to Revised Interrogatory No. 2 is sustained as to the portion of this interrogatory excised by the court, and is overruled as to this interrogatory as edited by the court. Dr. Ray is directed to answer Revised Interrogatory No. 2 as edited by the court.

> **REVISED NO. 4**: Please state the factors that would have most likely contributed to the failure of the urological treatment Dr. Ray gave to Lyons in 2001 and these factors' relationship to this failure. In formulating your answer please consider that Dr. Ray has or should have all of Lyons's medical records from at least 1999 through 2003 and include at least the following information:
> (a) The nature of Lyons's urethral stricture condition;
> (b) Intermittent Self-Catherization ("ISC");
> (c) Urological follow-up;
> (d) Incarcerated status;
> (e) Involvement of Bureau of Prisons ("BOP") medical personnel

Defendant Dr. Ray objects to Revised Interrogatory No. 4, asserting that it is not materially different from the original Interrogatory No. 4, which the court found to be argumentative, vague, ambiguous, and speculative.

In considering Revised Interrogatory No. 4, the Magistrate Judge concludes that it assumes the failure of Dr. Ray's treatment. Dr. Ray should answer this Revised Interrogatory No. 4 *only if* he acknowledges that his treatment of plaintiff has been a "failure."

## B. Plaintiff's motion to resolve discovery disputes related to the Memorandum Order of March 16, 2006

This motion concerns plaintiff's dissatisfaction with defendant's supplemental answers to certain Interrogatories and with defendant's answers to certain Interrogatories, as rephrased, and resubmitted to defendant following the Memorandum Order of March 16, 2006. Specifically, plaintiff is dissatisfied with defendant's answers to Interrogatory Nos. 5 and 21, as revised, and with defendant's supplemental answers to Interrogatory Nos. 13, 14, 15, 16, 18, 21, and 22. Plaintiff is also dissatisfied with defendant's answers to Interrogatory Nos. 11, 15, 18, and 23.

That portion of the Memorandum Order of March 16, 2006, concerning Interrogatories, ordered as follows:

> 1. Defendant's objections to Interrogatory Nos. 13, 14, and 16 are **OVERRULED**. Defendant is given ten (10) days from the date of this Order in which to supplement his answers to these Interrogatories.

4

> 2. Defendant's objections to Interrogatory Nos. 5, 17, 20, 21, and 22 are **SUSTAINED**. Defendant's answers to these Interrogatories are sufficient and need not be supplemented.
> 3. Plaintiff is directed to rephrase Interrogatory Nos. 5 and 21 and to resubmit them to defendant within ten (10) days of the date of this Order.

Memorandum Order, p. 6 [DE #29].

The Interrogatories in dispute and defendant's responses thereto are considered below:

> REVISED NO. 5: Was the presence of Lyons's multiple (6+ since 1997) prior surgical interventions that had complications and their resultant failure considered a significant aspect of Lyons's patient history in determining urological treatment for Lyons in 2001? If so, what risks did this entail and how did this effect (sic) prognosis?
>
> ANSWER: A patient's, including Lyons's, prior medical history is taken into consideration when determining appropriate treatment. In Lyons's case his prior surgical interventions did not alter treatment nor the treatment rendered on his presentation to Dr. Ray.

Plaintiff contends that Dr. Ray's answer is insufficient in that he did not answer the last portion of this interrogatory: "If so, what risks did this entail and how did this effect (sic) prognosis?" In response, Dr. Ray asserts that his answer is sufficient.

Based on Dr. Ray's affirmative response to the first question posed in this interrogatory, the Magistrate Judge concludes that Dr. Ray is also obligated to respond to the remainder of this interrogatory concerning risks and prognosis; had Dr. Ray responded in the negative to the first question posed in this interrogatory, there would be no need to respond to the remainder thereof. Dr. Ray is directed to supplement his answer to this interrogatory (Revised No. 5), for the purpose of responding to the second question concerning risks and prognosis.

> INTERROGATORY NO. 11: Specifically describe, in full detail, your 3/21/2001 Office examination, to include, but not limited to, physical examination notation of a "glans ulceration", infection route susceptibility of such an open sore, treatment recommendations you provided for this ulceration and to who [sic] were these treatments recommendations given.
>
> ANSWER: See answer to interrogatory No. 8.[3]

---

[3] INTERROGATORY NO. 8: State any and all steps that you took and recommendations made to Lyons after the 2/22/2001 visit regarding any self-catherization and/or
(continued...)

5

Plaintiff advised Dr. Ray that he considered Dr. Ray's answer to Interrogatory No. 11 to be insufficient. Dr. Ray reviewed plaintiff's comments concerning his answer thereto and concluded that his original answer to this interrogatory is sufficient.

The Magistrate Judge concludes that Dr. Ray's answer to Interrogatory No. 11 is sufficient and need not be supplemented. The medical records to which Dr. Ray refers plaintiff provide a satisfactory answer to this interrogatory.

> INTERROGATORY NO. 13: If you had emplaced a foley catheter on 4/19/2001, such as #12Fr., would this have likely prevented Lyons's urethral obstruction that required cyctoscopic dilatation on 5/18/01?
>
> ANSWER: Objection. This interrogatory calls for speculation. Without waiving this objection, it is impossible to know whether it would have prevented urethral obstruction. It is quite possible that the placement of a catheter would have caused further complications.

Plaintiff contends that Dr. Ray's answer is insufficient since most medical decisions call for some medical speculation. In response, Dr. Ray asserts that his answer is sufficient.

The Magistrate Judge is unpersuaded by plaintiff's argument that Dr. Ray's answer to this interrogatory is insufficient. Plaintiff's objection thereto is overruled. Dr. Ray need not further supplement his answer to Interrogatory No. 13.

> INTERROGATORY NO. 14: Would a urethral tissue biopsy have determined the etiology of the 4/19/2001 inflammation episode and possibly the etiology of Lyons's stricture condition?
>
> ANSWER: Objection. This interrogatory calls for speculation. Without waiving this objection, a urethral tissue biopsy was not likely to provide any additional insight into the etiology.

Upon receipt of Dr. Ray's answer to this interrogatory, which plaintiff contends is insufficient, plaintiff revised this interrogatory, as follows:

---

(...continued)
urological treatment to maintain his ability to void.

> ANSWER: See medical records attached in response to number 58 to Lyons' request for production of documents.

6

> REVISED INTERROGATORY NO. 14: In regards to Dr. Ray's examination of Lyons at FMC LEX, please state that if a urethral tissue biopsy or other related lab tests, such as a wound and blood cultures, would have most likely determined the etiology of Lyons's infection/inflammation episode of 4/19/2001?

In considering this matter, the Magistrate Judge notes that the Memorandum Order of March 16, 2006, directed Dr. Ray to supplement his answer to Interrogatory No. 14, which Dr. Ray did. The Memorandum Order of March 16, 2006, did not authorize plaintiff to submit a revised Interrogatory No. 14 to Dr. Ray. The Magistrate Judge is unpersuaded by plaintiff's argument that Dr. Ray's supplemental answer to Interrogatory No. 14 is insufficient. Plaintiff's objection thereto is overruled. Dr. Ray need not further supplement his answer to the original Interrogatory No. 14, and Dr. Ray need not respond to plaintiff's Revised Interrogatory No. 14.

> INTERROGATORY NO. 15: Specifically describe, in full detail, the 5/18/2001 procedure/surgery that you performed on Lyons at your Office to include, but not limited to emergency surgery status, any and all complications encountered, all urological/urethral anomalies encountered, quantitative analysis of Lyons's midi-distal penile urethral scar, quantitative analysis of Lyons's multiple strictures, post-operative instructions give[n], who was suppose to implement and supervise the post-operative treatment plans and what were the details of follow-up treatment/evaluation plans (exams, urethrograms, etc.).
>
> ANSWER: See answer to interrogatory No. 8.

Plaintiff advised Dr. Ray that he considered Dr. Ray's answer to Interrogatory No. 15 to be insufficient because neither Dr. Ray's answer nor the medical records indicate (1) to whom post-operative instructions were given, and (2) who was designated to implement these instructions and ensure they were followed. Plaintiff also contends that the medical records are not fully responsive to his request that Dr. Ray provide a full, detailed description of the 5/18/2001 dilation procedure. Dr. Ray reviewed plaintiff's comments concerning his answer thereto and concluded that his original answer to this interrogatory is sufficient.

The Magistrate Judge concurs with plaintiff that Dr. Ray's answer to Interrogatory No. 15 is not completely responsive in that the medical records to which Dr. Ray referred plaintiff do not fully answer Interrogatory No. 15. Dr. Ray is directed to supplement his answer to Interrogatory No. 15 by (1) identifying the person to whom post-operative instructions were given and by identifying

the person who was charged with implementing these instructions to ensure they were followed, and (2) by providing a full, detailed description of the 5/18/2001 dilation procedure.

> INTERROGATORY NO. 16: If Lyons's urethral stricture condition was "stable" as you stated, then state and fully account for the deterioration, obstruction and lack of stability that resulted, leading to the 5/18/01 dilation.
>
> ANSWER: I do not recall specific dates on which I stated that Lyons's condition was "stable" or if I stated this. I did note in Lyons's medical record on February 22, 2001 his stricture disease was stable. Although I do not recall making such a statement on March 23, 2001 or thereafter, Lyons's medical record from March 23, 2001 shows that his stricture disease was stable at that time. Lyons's medical condition, stricture disease, is a chronically recurrent condition that, in all likelihood, will continue to manifest itself in varying degrees of severity over time. When there is no need for acute intervention then the condition is considered "stable."

Plaintiff submits that "Dr. Ray contradicts himself when he uses the term 'acute intervention.'" Plaintiff contends that Dr. Ray should rephrase his answer to resolve the contradictory definition of "stable" and ISC.

In response, Dr. Ray asserts that his answer to this interrogatory is sufficient.

The Magistrate Judge is unpersuaded by plaintiff's argument that Dr. Ray's answer to this interrogatory is contradictory and/or that Dr. Ray needs to rephrase this answer to eliminate this contradiction. Neither plaintiff's interrogatory nor Dr. Ray's response mentions ISC; ISC is mentioned for the first time in respect to this interrogatory in plaintiff's argument that Dr. Ray's answer should be rephrased because it is contradictory. Plaintiff's objection thereto is overruled. Dr. Ray need not further supplement his answer to Interrogatory No. 16.

> INTERROGATORY NO. 18: Fully describe all aspects of Lyons's narrow urethra to include, but not limited to, caliber of urethra (penile & bulbar), comparison to average male urethra, surgical complications and/or risks by his narrow urethra considering multiple prior surgical interventions and number of stricture points encountered.
>
> ANSWER: See answer to interrogatory No. 8. Average male urethra in comparison would be normal and not involve stricture disease. Material risk to Lyons of his condition is further stricture disease.

Plaintiff advised Dr. Ray that he considered Dr. Ray's answer to Interrogatory No. 18 to be insufficient because in his answer, Dr. Ray did not compare plaintiff's urethra with that of a healthy, normal male urethra, and also did not provide caliber measurements, as the interrogatory requested.

Dr. Ray reviewed plaintiff's comments concerning his answer thereto and concluded that his original answer to this interrogatory is sufficient.

The Magistrate Judge concludes that Dr. Ray's answer to Interrogatory No. 18 is not fully responsive thereto. Dr. Ray is directed to supplement his answer to Interrogatory No. 18 by comparing plaintiff's urethra with that of a healthy, normal male urethra, including caliber measurements.

> REVISED NO. 21: In regards to Urinary Tract Infections ("UTI"); such as ones Lyons has had: pseudomonas aeruginosa, Escheria Coli, Proteus Mirabilis, Serratia Marcesens, Staphylococcus, Streptococcus and Staphepidermis); please describe and address the following:
>
> a) What are the symptoms of a UTI;
> b) What the risks of a UTI;
> c) Are UTIs considered serious by the AMA and AUA;
> d) Are UTIs considered a serious health concern for those who ISC;
> e) Are UTIs considered more relevant with the occurrence of more than two per year;
> f) How do you prevent UTIs, especially in an institutional environment, such as FMC LEX?
>
> ANSWER: Objection. This interrogatory is overly broad and unduly burdensome. The Court's order entered March 16, 2006 sustained this defendant's objection and did not require Dr. Ray to answer the interrogatory in its original format. The revised interrogatory simply breaks each element of the question into a subpart but does not narrow the question in accordance with the statements made in the telephonic hearing and as noted in the Court's order. Without waiving this objection, infections of the type listed in Lyons's interrogatory are sometimes serious and sometimes not serious. The prevention of UTI infections is widely variable depending upon the individual circumstances of the case but may include, among many other possible actions, ensuring that procedures undertaken are sterile. My training and experience on this subject are extensive and cannot be succinctly stated in an answer to an interrogatory.

Plaintiff submits that Dr. Ray's answer to this interrogatory is insufficient and that given Dr. Ray's qualifications, he should be able to answer this interrogatory.

In response, Dr. Ray asserts that his answer to this interrogatory is sufficient.

Out of an abundance of caution to plaintiff's rights, the Magistrate Judge concludes that Dr. Ray should supplement his answer to this interrogatory by answering subparts (a) and (b) thereof. Dr. Ray's answer is responsive to subparts (c), (d), and (f). Subpart (e) is too vague and ambiguous to require an answer. Thus, plaintiff's objection to Dr. Ray's answer to Interrogatory No. 21 is

9

overruled in part and sustained in part. Dr. Ray is directed to supplement his answer to this interrogatory by answering subparts (a) and (b).

**Interrogatory No. 22**

Describe in detail, with medical documentation, why you believe and told Lyons, that urethral strictures and penile urethral scarring, which is on the underside of the penis, cannot in any way cause ventral curvature, a form of ED (erectile dysfunction) or any form of ED to include why you believe and told Lyons, that a urethral tear, cannot in any way contribute to the aforementioned urethral scarring, stricture formation and/or ED.

ANSWER: Objection. Dr. Ray does not have the belief stated in this interrogatory and he made no statement to that effect to Lyons.

Plaintiff has brought to the court's attention the fact that the defendant's answer to Interrogatory No. 22 was incorrectly quoted in the Memorandum Order of March 16, 2006, wherein the court omitted the word "not" from Dr. Ray's answer. Dr. Ray's answer, as misquoted by the court stated:

ANSWER: Objection. Dr. Ray does have the belief stated in this interrogatory and he made no statement to that effect to Lyons.

Dr. Ray's answer as relayed to plaintiff is the correct answer to Interrogatory No. 22; the court's misquotation of this answer is not controlling and has no impact on Dr. Ray's answer.

INTERROGATORY NO. 23: State steps you took, diagnosis and treatment, regarding Lyons urethral stricture condition to include, but not limited to, etiology determination, long term prognosis, and the nature of any other treatments, such as medication, provided for associated urethral and/or penile scarring.

ANSWER: See answer to interrogatory No. 8.

Plaintiff advised Dr. Ray that he considered Dr. Ray's answer to Interrogatory No. 23 to be insufficient because the medical records do not indicate what steps were taken, as requested by the interrogatory, regarding etiology determination, and included no statements regarding prognosis, or any other treatments provided for urethral strictures or scarring. Dr. Ray reviewed plaintiff's comments concerning his answer thereto and concluded that his original answer to this interrogatory is sufficient.

10

The Magistrate Judge concludes that Dr. Ray's answer to Interrogatory No. 23 is not completely responsive in that the reference to the medical records do not answer the interrogatory. Dr. Ray is directed to supplement his answer to Interrogatory No. 23 by answering the interrogatory, as asked, indicating what steps were taken regarding etiology determination, including statements regarding prognosis and any other treatments provided for urethral strictures or scarring.

C.     **Plaintiff's motion to reconsider the Memorandum Order of May 11, 2006**

Plaintiff has also moved for reconsideration of the Memorandum Order of May 11, 2006, which denied plaintiff's motion to modify the protective order of March 16, 2006, for the purpose of permitting him to serve an additional fifty (50) Requests for Admissions ("RFAs") to defendant Dr. Ray. As grounds for his motion to reconsider, plaintiff reminds the court that due to the fact that he is incarcerated and is proceeding *pro se,* the court may need to accord him flexibility in conducting discovery that would otherwise be unnecessary. Plaintiff also points out that the main reason the Magistrate Judge ordered that his previous 422 RFAs be stricken was that the Magistrate Judge believed 422 RFAs to be an excessive number of RFAs; however, plaintiff further points out that other courts have permitted similar and greater numbers of RFAs to be served. *See Al-Jundi v. Rockefeller*, 91 F.R.D. 590, 592 (W.D.N.Y. 1981) (154 RFAs allowed); *Photon, Inc. v. Harris Intertype, Inc.*, 28 F.R.D. 327, 328 (D. Mass. 1961) (704 RFAs allowed).

Defendant objects to plaintiff's motion to reconsider the Memorandum Order of May 11, 2006, arguing that plaintiff has presented no new grounds for why the court should reconsider said Order.

Given plaintiff's circumstances and given that other courts have permitted a party to serve more than fifty (50) RFAs, out of an abundance of caution to plaintiff's rights, the Magistrate Judge is persuaded that plaintiff should be permitted to serve an additional (50) RFAs to Dr. Ray.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion to reconsider the Memorandum Order of May 2, 2006 [DE #47] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

11

    a. Dr. Ray is directed to answer plaintiff's revised Interrogatory No. 1 identified as "Revised No. 1";

    b. Dr. Ray is directed to answer Revised No. 2, as edited by the court, as follows:

> **REVISED NO. 2**: Please state the factual and medical basis for your 5/18/2001 decision of a dilation with filliforms & followers and cystoscopy to treat Lyons's urethral strictures.

    c. Dr. Ray is directed to answer Revised No. 4 only if he concedes that his treatment of plaintiff is a "failure."

    2. Plaintiff's motion to resolve discovery disputes related to the Memorandum Order of March 16, 2006 [DE #47] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Dr. Ray is directed to supplement his answer to REVISED NO. 5 by responding to the second question concerning risks and prognosis;

    b. Dr. Ray's answer to INTERROGATORY NO. 11 is sufficient and need not be supplemented;

    c. Dr. Ray's answer to INTERROGATORY NO. 13 is sufficient and need not be supplemented;

    d. Dr. Ray's answer to INTERROGATORY NO. 14 is sufficient and Dr. Ray need not respond to REVISED INTERROGATORY NO. 14;

    e. Dr. Ray is directed to supplement his answer to INTERROGATORY NO. 15 by (1) identifying the person to whom post-operative instructions were given and by identifying the person who was charged with implementing these instructions to ensure they were followed, and (2) by providing a full, detailed description of the 5/18/2001 dilation procedure;

    f. Dr. Ray need not supplement his answer to INTERROGATORY NO. 16;

    g. Dr. Ray is directed to supplement his answer to INTERROGATORY NO. 18 by comparing plaintiff's urethra with that of a healthy, normal male urethra, including caliber measurements;

h. Dr. Ray is directed to supplement his answer to <u>INTERROGATORY NO. 21</u> by answering subparts (a) and (b) thereof.

i. Dr. Ray is directed to supplement his answer to <u>INTERROGATORY NO. 23</u> by answering the interrogatory, as asked, indicating what steps were taken regarding etiology determination, including statements regarding prognosis and any other treatments provided for urethral strictures or scarring.

3. Plaintiff's motion to reconsider the Memorandum Order of May 11, 2006 [DE #48] is **GRANTED**, and upon reconsideration, plaintiff is given leave to submit an additional fifty (50) RFAs to Dr. Ray.

4. Dr. Ray is given thirty (30) days from the date of this Order in which to supplement his answers to plaintiff's Interrogatories as detailed above.

This ___7th___ day of July, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

13