```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| JAMES D. LYONS, | ) |
| | ) |
|     Plaintiff, | ) Civil Action No. 5:05-405-JMH |
| | ) |
| v. | ) |
| | ) |
| CHARLES G. RAY, M.D., | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
|     Defendant. | ) |

                \*\*   \*\*   \*\*   \*\*   \*\*

Before the Court is the summary judgment motion of Defendant Charles G. Ray, M.D. ("Dr. Ray") [Record No. 65]. Plaintiff James D. Lyons ("Lyons") has filed a response [Record No. 68], to which Dr. Ray replied [Record No. 69]. Without moving for leave to file a supplemental response, Lyons then filed an additional response to Dr. Ray's summary judgment motion [Record No. 75]. Dr. Ray moved to strike that response [Record No. 79], and that motion has been fully briefed. Accordingly, this matter is ripe for review.

**I.   Factual and Procedural Background**

Lyons was incarcerated at the Federal Medical Center (FMC) at Lexington from January 30, 2001 until July 5, 2001. Dr. Ray is a board certified urologist who has contracted with FMC Lexington to provide medical care to the inmates housed in that facility. Dr. Ray began to treat Lyons for his medical condition, urethral stricture, on February 22, 2001 when he examined Lyons at FMC Lexington. Lyons maintains that this medical condition dates back to at least 1995. When Dr. Ray first began seeing Lyons in 2001,

Lyons had been self-catheterizing since 1998 pursuant to a previous treating physician's orders. Dr. Ray assessed Lyon's stricture disease as stable and recommended a urethrogram. On March 23, 2001, Lyons received a urethrogram at Dr. Ray's office. Lyons's next visit with Dr. Ray was on April 19, 2001, at FMC Lexington. According to Lyons, he had not been able to self-catheterize for a week because he had developed an inflammatory condition. Lyons was prescribed antibiotics for his inflammation, but the cause of the inflammation was never determined. Lyons saw Dr. Ray on May 17, 2001, and complained of being unable to urinate. Dr. Ray was unable to catheterize him at FMC Lexington, and the next day, Dr. Ray saw Lyons at his Lexington office where he succeeded in catheterizing Lyons with a Foley catheter that remained in place for three days. Dr. Ray instructed Lyons to resume self-catheterization afterward and prescribed antibiotics for Lyons's urinary tract infection. Lyons claims that after this catheterization procedure was performed by Dr. Ray, he noticed further damage to his urethral opening and ulcerations.

    In his complaint, Lyons contends that Dr. Ray was negligent

> a. In failing to properly and/or appropriately treat Plaintiff's medical condition; and/or
> b. In failing to diagnose the etiology of Plaintiff's urethral stricture condition with appropriate diagnostic test, such as a biopsy; and/or
> c. In failing to recommend and/or provide a meatal dilator, which would have reduced meatal scarring and stenosis while making self-cathing easier and less traumatic for Plaintiff; and/or
> d. In failing to treat associated urethral pain from

cathing with the proper remedy of lidocaine, available in plastic syringes; and/or
e. In failing to promptly and adequately treat Plaintiff's urethral/meatal ulcerations, which became a vector route for a more serious bacterial infection by 4/14/01 when Defendant Ray was aware of the condition before 3/23/01; and/or
f. In failing to appropriately treat Plaintiff's serious bacterial infection, which produced scrotul [sic] and testicular swelling and inflammation and intense pain when Defendant Ray evaluated Lyons on 4/19/01; and/or
g. In failing to take biopsy/tissue culture of the 4/14/01 infection when Defendant Ray evaluated Plaintiff on 4/19/01; and/or
h. In failing to prevent the predictable urethral obstruction due to Plaintiff's stricture condition combined with the bacterial inflammation by deliberately neglecting to emplace a foley cath in Plaintiff on 4/19/01 to prevent the progression leading to the 5/17/01 obstruction; and/or
I. In failing to exercise reasonable care when ordering Plaintiff to stop self-cathing on 4/19/01 when such medical treatment was only method available to prevent urinary tract closure/obstruction; and/or
j. In failing to conduct a urological follow-up between 4/19/01 and 5/17/01, which would have most likely prevented the 5/17/01 obstruction; and/or
k. In failing to discuss and provide information prior to the 5/18/01 cystoscopic dilation due to the aforementioned urinary tract obstruction concerning any possible risks, negative effects, ramifications and the follow-up schedule regarding the office surgical procedure; and/or
1. In failing to timely provide medical records regarding Plaintiff's 3/23/01 and 5/18/01 Office consults; and/or
m. In failing to exercise medical due diligence by neglecting to conduct the necessary urological follow-up after the 5/18/01 procedure; and/or
n. In falsely declaring Plaintiff's urethral stricture condition "Stable" before the necessary 5/18/01 dilation and after the dilation when he failed to conduct a follow-up urological evaluation to determine if "Stable" while Plaintiff was using a smaller cath with difficulty; and/or
o. In failing to discuss, diagnose, evaluate or treat Plaintiff's collateral damage complaint of ED/Impotence; and/or
p. In disregarding the relationship of urethral

> strictures, trauma & scarring [from self-cathing & iatrogenic sources (as any & all surgical devices can easily damage urethral walls)] with ED/Impotence as scar tissue has very different properties than urethral and erectile tissue; and/or
> q. In failing to recommend and/or provide any treatment for Plaintiff's urethral and penile scarring/scar tissue; and/or
> . . .
> t. Contributed substantially to Plaintiff's urethral deterioration to the current damaged condition in which a urinary tract by-pass had to be performed on 1/2/03, which reduced the chance/probability of urethral repair from 90% (Simple Urethroplasty) to less than 50% (Multi-Graft) [when performed by qualified specialty urologist].

As noted, Lyons was transferred from FMC Lexington on July 5, 2001.

In addition to his medical malpractice claim, Lyons alleges that Dr. Ray conspired with employees of FMC Lexington. He describes his conspiracy claims as follows:

> r. In conspiring with the FMC Lexington Defendants by providing misleading statements that were placed into Plaintiff's June 2001 BOP Medical Transfer Summary that were inconsistent with urological standards without performing any diagnostic tests and/or evaluations in support of his opinion that Plaintiff's ED/Impotence complaint was not related in any way to urethral strictures, scarring or trauma and as such did not exist; and/or
> s. In conspiring with the FMC Lexington Defendants and/or by independent deception created a situation for his personal benefit to the Plaintiff's detriment in a manner to defraud the federal government for unnecessary medical services and/or by creating a false need for such medical services while engaged in an ongoing conspiracy with FMC Lexington Defendants to withhold other aspects of medical treatment in a manner to deliver sub-standard medical care contrary to community standards; . . . .

Lyons initially filed his complaint against Dr. Ray, and several other defendants, in the United States District Court for

4

the Northern District of Ohio on July 31, 2003. The court granted Dr. Ray's motion to dismiss for lack of personal jurisdiction and subsequently transferred the claims against Dr. Ray to this Court on October 3, 2005. Dr. Ray filed the instant motion for summary judgment on October 6, 2006, arguing that Lyons has not presented any evidence to support the essential elements of his claims of medical negligence and conspiracy.

**II.  Motion to Strike**

Responding to Dr. Ray's motion for summary judgment, Lyons claims that Dr. Ray must first ask the Court for permission to file a dispositive motion because Magistrate Judge James B. Todd suspended both the discovery deadline and the dispositive motion deadline on June 6, 2006 [Record No. 52]. That order neither prohibits the filing of a dispositive motion nor requires parties to move the Court for permission to file such a motion.

As noted above, Dr. Ray filed his summary judgment motion on October 6, 2006, and Lyons filed a response within the time allowed by the local rules. On December 6, 2006, Lyons filed another response to Dr. Ray's motion for summary judgment. This sixty-four-page-long response exceeded the page limit allowed by the local rules. Jt. Ky. Loc. R. 7.1(d). Furthermore, Lyons never moved the Court for permission to file a supplemental response or to file a response outside of the time allotted by the local rules.

5

Dr. Ray has moved to strike this second response. Lyons's reasoning for not filing a timely and complete response to Dr. Ray's summary judgment motion is unpersuasive. The Court will not ignore Lyons's failure to abide by the local rules and thus will not consider the December 6, 2006 response. The Court therefore finds that the motion to strike is well made. Plaintiff's motion for leave to file a sur-reply to this motion to strike is denied.

**III. Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. A fact is material if its resolution will affect the outcome of the lawsuit. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). Once the moving party satisfies its burden, the burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

When determining whether there is enough evidence to overcome summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, in this case, the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). Only material factual disputes will preclude summary judgment, and the dispute must be genuine, that is, the facts must be such that if proven at trial, a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The Court must not weigh the evidence, but must decide whether there are genuine issues for trial. *Id.* at 249.

**IV. Analysis**

    *A.   Whether Lyons Has Been Afforded Sufficient Time for Discovery*

In his response to Dr. Ray's summary judgment motion, Lyons argues that numerous discovery issues remain outstanding; therefore, the dispositive motion is premature because he requires more time to conduct adequate discovery. This argument could be construed as a request for Rule 56(f) relief.

Federal Rule of Civil Procedure Rule 56(f) provides:

> (f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).  In *Cacevic v. City of Hazel Park*, 226 F.3d 483 (6th Cir. 2000), the Sixth Circuit explained, "Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information."  *Id.* at 488 (citing *Radich v. Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989)).  Lyons must "show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment."  *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998); *see also Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) (stating that "a party invoking Rule 56(f) protections must 'affirmatively demonstrate . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" (quoting *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998))).  Once there has been a reasonable opportunity for discovery, the party opposing the summary judgment motion must make an affirmative showing of the need for additional discovery.  *Emmons v. McLaughlin*, 874 F.2d 351, 356-57 (6th Cir. 1989).

Lyons's explanation for his inability to present facts essential to justify his opposition is not persuasive.  His claim that more discovery is necessary is unavailing, as he has made no showing that more discovery will disclose any disputed material

facts. *See Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989). Furthermore, Magistrate Judge Todd has resolved multiple discovery disputes during the course of this litigation and has issued an order prohibiting the filing of any additional discovery related motions until the instant summary judgment motion is resolved [Record No. 100]. The Court agrees with Magistrate Judge Todd's implicit conclusion that any pending discovery disputes alleged by Lyons are no bar to a decision on the summary judgment motion.

    B.    *Whether Summary Judgment Should Be Granted on Lyons's Negligence Claim*

To bring a claim of medical negligence under Kentucky law, the plaintiff must present evidence to show that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which that duty is measured, and (3) consequent injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). Dr. Ray argues that Lyons has failed to present expert testimony to prove the applicable standard of care as to Dr. Ray, that he departed from that standard of care, and that Lyons's injuries resulted from that departure.

In a medical malpractice case, the burden of proof is upon the plaintiff to establish the negligence of a physician by medical or expert testimony. *Morris v. Hoffman*, 551 S.W.2d 8, 9 (Ky. Ct. App. 1977). Kentucky recognizes two exceptions to this requirement, both of which permit the inference of negligence even in the

9

absence of expert testimony. *See Perkins v. Hausladen*, 828 S.W.2d 652, 654-55 (Ky. 1992). Under one exception, expert testimony is not required if "'any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care.'" *Id.* at 655 (quoting W. Page Keeton, et al., Prosser & Keeton on the Law of Torts, § 39 (5th ed. 1984)). Likewise, pursuant to the second exception, if the defendant physician makes admissions of a technical character from which one could infer that he or she acted negligently, plaintiff would not be charged with bringing forth expert testimony. *Id.*

The first exception to Kentucky's requirement of expert testimony on the elements of negligence is most often illustrated by a physician leaving a sponge in a patient or removing the wrong appendage during surgery. *See, e.g.*, *Laws v. Harter*, 534 S.W.2d 449 (1975). Lyons cites to *Irving Independent School District v. Tatro*, 468 U.S. 883 (1984), a case in which the Supreme Court noted that a layperson could be trained to catheterize a young child during the school day so that she could attend classes. *See id.* at 894. *Tatro* does not even discuss expert testimony and certainly does not relieve Lyons of his burden to show that Dr. Ray's actions in advising him to continue with Intermittent Self Catheterization breached the standard of care or caused his injuries. In this case, Lyons alleges that Dr. Ray's treatment decisions exacerbated

10

his pre-existing urethral stricture condition. But it is not within the realm of a layperson's understanding to decide whether those treatment decisions breached the standard of care and caused Lyons's injuries. For example, Lyons alleges that Dr. Ray was negligent in "failing to recommend and/or provide a meatal dilator, which would have reduced meatal scarring and stenosis while making self-cathing easier and less traumatic for Plaintiff." (Compl. ¶ 359(c).) Without the aid of expert testimony, a layperson could not conclude that Dr. Ray, by failing to recommend or provide a meatal dilator, did not conform to the standard of acceptable professional care. Unlike *Perkins v. Hausladen* and other cases in which the *res ipsa loquitur* doctrine was found to apply, this is simply not a case in which it can be inferred, absent expert testimony, that Dr. Ray's actions fell below the standard of care.[1]

As to the second exception to the expert testimony requirement, the Court is unable to find where Lyons cites to a specific admission by Dr. Ray that infers negligence on his part. This is in contrast to the *Perkins* case in which the surgeon

---

[1] Lyons alleges that Dr. Ray failed to appropriately treat his medical condition and disagrees with Dr. Ray's 2001 advice to continue with self-catheterization. It appears, however, that Lyons's physicians at Duke University Medical Center agreed with this treatment option in December of 2002. In Andrew C. Peterson, M.D.'s December 18, 2002 counseling notes on Lyons, he writes: "We spent over 30 minutes discussing the risks and benefits and different treatment options for his disease process currently. Those treatment options include: 1. Continuation of self-calibration. . . ."

admitted in his deposition that while performing surgery on the plaintiff, "one of the prime objectives of the surgeon is to make sure he does not tear the sigmoid sinus, a vein that drains the brain area into the internal jugular vein." *Perkins*, 828 S.W.2d at 653. The plaintiff's husband alleged that the surgeon stated to him after surgery that he had "drilled in and he had hit a blood vein." *Id.* The Supreme Court of Kentucky found that the surgeon's own admissions qualified as testimony as to the standard of care so that the plaintiff's failure to provide an expert witness to testify as to this standard did not support summary judgment for the surgeon. *Id.* at 656. Lyons's case, however, is not one in which the necessary expert testimony may be found in Dr. Ray's own admissions.

Because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial" and Lyons has failed to produce expert testimony showing that Dr. Ray's treatment of him fell below the acceptable standard of medical care, summary judgment in favor of Dr. Ray is appropriate. *Celotex*, 477 U.S. at 323.

    C.   *Whether Summary Judgment Should Be Granted on Lyons's Conspiracy Claim*

Lyons alleges that Dr. Ray engaged in a conspiracy to knowingly continue ineffective treatment and intentionally withhold necessary medical treatment. If Lyons is attempting bring a claim against Dr. Ray pursuant to 42 U.S.C. § 1985, the statute he cites

12

in his complaint, he must provide evidence of a conspiracy that would deprive him of equal protection of the laws or of equal privileges and immunities under the law.  42 U.S.C.§ 1985(3).  Subsection (1), which covers conspiring to prevent an officer of the United States from performing his official duties, and subsection (2), which prohibits conspiring to obstruct justice, do not apply to Lyons's situation.  Subsection (3) of § 1985 requires proof of a racial or otherwise class-based discriminatory animus behind the defendant's actions. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993).  Lyons has not alleged any facts suggesting that he was deprived of equal protection of the laws or equal privileges and immunities under the law because of his race or class.  As a result, his conspiracy claims under § 1985 must be dismissed.

If the Court were to construe Lyons's complaint as bringing a claim against Dr. Ray for conspiring to deprive him of his Eighth Amendment rights under 42 U.S.C. § 1983, that claim fails as well.  The government has a duty to provide adequate medical treatment to those in its custody and delegating that obligation to a medical professional does not relieve it of that duty. *West v. Atkins*, 487 U.S. 42, 56 (1988).  Furthermore, those medical professionals who contract with the government to provide treatment to incarcerated individuals are considered state actors. *Id.* at 57.  Although "[i]t is undisputed that the treatment a prisoner receives in

13

prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Helling v. McKinney*, 509 U.S. 25, 31 (1993), Lyons has not shown that Dr. Ray acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

In his conspiracy claims, Lyons alleges that Dr. Ray failed to perform other diagnostic tests, withheld medical treatment, and delivered "sub-standard medical care contrary to community standards." (Compl. ¶ 359(s).) But "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Dr. Ray saw Lyons on five occasions between February and May of 2001 to treat Lyons's urethral stricture condition. Lyons's disagreement with Dr. Ray's medical decisions does not set forth an Eighth Amendment violation. *See id.* at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). As noted, Lyons does not offer any support for the claim that Dr. Ray demonstrated deliberate indifference to Lyons's serious medical needs.

## V. Conclusion

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) that Defendant's motion for summary judgment [Record No. 65] be, and the same hereby is, **GRANTED;**

14

    (2) that Defendant's motion to strike [Record No. 79] be, and the same hereby is, **GRANTED**; and

    (3) that Plaintiff's motion to file a sur-reply [Record No. 89] be, and the same hereby is, **DENIED**.

    This the 1st day of March, 2007.



Signed By:
*Joseph M. Hood*
United States District Judge